IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMIE LEWIS                                  :
                                             :
                                             :
     v.                                      :     Civil No. CCB-14-3363
                                             :
                                             :
BALTIMORE CITY BOARD OF SCHOOL               :
COMMISSIONERS, *et al*.                      :

# MEMORANDUM

Plaintiff Jamie Lewis brings suit against the Baltimore City Board of School Commissioners ("the Board"), Jerome Jones, and others, alleging sex discrimination, retaliation, and disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").[1] The Board and Jones have filed a motion for summary judgment. The issues have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2014). For the reasons stated below, the court will grant the defendants' motion for summary judgment.

## BACKGROUND

Lewis began working as a language arts teacher at Northeast Middle School in August 2006. (Lewis Dep. 25, Mot. Summ. J. Ex. A, ECF No. 18-2.) Wanda Young, the principal of the school at the time, promoted Lewis to the position of assistant principal in March 2007. (*Id*. at

---

[1] Lewis also sues Tisha Edwards, Kim Lewis, Tenia Rogers, Sean Conley, and Wanda Young. The plaintiff mailed copies of summonses with the complaint to these individual defendants, but because they are no longer Board employees, the Board did not accept service on their behalf and does not represent them. It appears they have not been served.

25-27, 32.) By the 2011-2012 academic year, however, Lewis and Young's relationship had become strained. Young sent Lewis an email expressing her dismay when Lewis attended a professional development seminar without Young's permission. (Young June 22, 2011 Email, Mot. Summ. J. Ex. B, ECF No. 18-3.) Young also wrote to Lewis to explain that Lewis had failed to attend a meeting Young had scheduled, and that Lewis did not follow protocol when signing out. (Young October 21-28, 2011 Emails, Summ. J. Ex. F, ECF No. 18-7; Young October 26, 2011 Email, Summ. J. Ex. G, ECF No. 18-8.) Young notified Lewis when she had reached "3 occasions of lateness and 3 occasions of absences" and asked her to "adhere to the attendance policy." (Young October 13, 2011 Email, Mot. Summ. J. Ex. C, ECF No. 18-4; Attendance Record, Mot. Summ. J. Ex. E, ECF No. 18-6.) On December 5, 2011, after Lewis had accumulated five periods of absence, the Baltimore City Public Schools Office of Human Capital ("Human Capital Office") sent her a "formal written caution that failure to adhere to the Attendance Program may result in disciplinary action up to and including dismissal." (Letter of Caution, Summ. J. Ex. D, ECF No. 18-5.) Additionally, Lewis did not properly fill out teacher evaluation forms in 2011. (Lewis Dep. 81-100; Young Memo, Summ. J. Ex. I, ECF No. 18-10.) In many evaluations, Lewis failed to complete the sections for the observer's supporting statements and areas for improvement. (Young Memo; Formal Observation Reports, Mot Summ. J. Ex. K, ECF No. 18-12; Lewis Dep. 90-100.) Young ultimately issued Lewis a written reprimand. (Written Reprimand, Mot. Summ. J. Ex. J, ECF No. 18-11.)

     In December 2011, Lewis filed a sexual harassment complaint with the Baltimore City Public Schools Equal Employment Opportunity Office ("EEO Office"). (Lewis Dep. 151.)[2] Lewis claimed that Young had written and sent an anonymous letter to Lewis's house on

---

[2] Neither party has provided the court with a copy of the complaint.

October 8, 2011. (Young Letter, Pl.'s Opp'n Ex. 40, ECF No. 24; Lewis Dep. 325-327.) The author of the letter claimed to be the mistress of Lewis's husband and wrote that Lewis "look[s] like a he-man with that big, donkey ass." (Young Letter.) Lewis also alleged that Young harassed her by verbally reprimanding her in front of her colleagues. (Lewis Dep. 135-142.) In one instance, Lewis was addressing a payroll issue with a substitute teacher before responding to a request from Young, and Young said, "See, that's the problem I have with people. . . . I can't tell my boss to wait a minute. It's going to be some changes around here. People are not going to be asked to come back here. I'm getting rid of people." (Lewis. Dep. 137-139.)

Because the EEO Office determined that Lewis's allegations amounted to "a generalized complaint of misconduct," and not sexual harassment under Title VII, the EEO Office transferred the complaint to the Board's Office of Staff Investigations ("Staff Investigations"), which handles general complaints of staff misconduct. (Jones Response, Pl.'s Opp'n Ex. 37, ECF No. 24; Lewis Dep. 152-153.) On August 20, 2012, Staff Investigations sent Lewis a letter confirming that the department had completed its investigation of her complaint and determined that "the allegations are . . . substantiated." (Staff Investigations Letter, Def.'s Mot. Summ. J. Ex. L, ECF No. 18-13.) As a result of the findings, Young was demoted from her principal position at Northeast Middle School. (Jones Response.)

Lewis became ill from stress she suffered due to her work environment, and on February 7, 2012, the Board granted Lewis's request for leave under the Family Medical Leave Act ("FMLA") to take care of her health condition from January 25, 2012 until May 26, 2012. (FMLA Letter, Def.'s Mot. Summ. J. Ex. M, ECF No. 18-14; Lewis Dep. 149-150.) On June 8, 2012, Lewis notified the Board that she would return to work on June 12, 2012 as an assistant

principal at Coppin Academy High School, a charter school within the Baltimore City Public School System. (Lewis June 12, 2012 Letter, Def.'s Mot. Summ. J. Ex. N, ECF No. 18-15; Lewis Dep. 153-154.) Coppin Academy offered Lewis a position while she was on FMLA leave, and Lewis worked at the school for a period of time. (Lewis Dep. 154-55, 161, 167.) The Board contends that it removed Lewis from the assistant principal position at Coppin Academy because her hiring did not receive the required approval from either the Board of School Commissioners or the Human Capital Office. (Edwards July 17, 2012 Email, Pl.'s Opp'n Ex. 33, ECF No. 24.)

On June 29, 2012, the Board sent Lewis a letter notifying her that she would be reassigned to a teacher level position for the 2012-2013 academic year pursuant to Md. Code Ann., Educ. § 6-201, which permits the chief executive officer to "transfer [personnel] as the needs of the schools require." (First Reassignment Letter, Def.'s Mot. Summ. J. Ex. O, ECF No. 18-16.) Lewis received an unsatisfactory annual evaluation for the 2011-2012 academic year from Northeast Middle School's executive director, Sean Conley, on July 26, 2012. (Annual Evaluation Report, Def.'s Mot. Summ. J. Ex. P, ECF No. 18-17; Lewis Dep. 32, 178-179.) Conley rated Lewis as unsatisfactory in four categories: improves instructional practices through purposeful observation and monitoring of teachers and other staff; ensures the regular integration of appropriate assessments into daily classroom instruction; uses multiple sources of data to improve classroom instruction; and maintains appropriate standards of professionalism, including completing and submitting all reports and requests for information in a timely manner. (Annual Evaluation Report.) Conley's comments focused on the incompleteness of Lewis's formal observations and her inconsistent attendance. (*Id*.) On August 16, 2012, the Board again notified Lewis that effective August 20, 2012, she would be reassigned as a teacher and that her

compensation would be commensurate with that position. (Second Reassignment Letter, Def.'s Mot. Summ. J. Ex. Q, ECF No. 18-18; Lewis Dep. 162.) Lewis was assigned to Carter G. Woodson Elementary/Middle School as an English teacher. (Assignment Email, Def.'s Mot. Summ. J. Ex. R, ECF No. 18-19.) In September 2012, Lewis resigned her employment with the Board. (Lewis Dep. 166-169.)

In addition to her sex discrimination and retaliation claims, Lewis also alleges that Young violated the confidentiality provisions of the ADA by sharing her medical records. On December 6, 2011, Lewis's husband faxed Young a return to work slip from Lewis's psychiatrist, and Lewis claims that Young shared the information in her doctor's note with Victoria Parrish-James, a grade level administrator. (Return to Work Slip, Pl.'s Opp'n, ECF No. 24; Lewis Dep. 142-143.) The slip provides that Lewis "[w]ill be totally disabled" from December 6 until December 16, and she would be able to return to work on December 16. (Return to Work Slip.) Young told Parrish-James that Lewis's doctor was a psychiatrist and that Lewis was crazy. (Lewis Dep. 143.)

Lewis filed a charge of discrimination with the Baltimore Community Relations Commission on September 7, 2012. (Charge of Discrimination, Mot. Summ. J. Ex. S, ECF No. 18-20.) In her charge, Lewis claimed her employer discriminated against her due to her disability and in retaliation for participating in a protected activity. (Charge of Discrimination.) The Equal Employment Opportunity Commission ("EEOC") did not find any violations. (EEOC Dismissal and Notice of Rights 3, Supp. Compl., ECF No. 2.)

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

    I.      Individual Defendants

Individuals cannot be held liable under Title VII or the ADA. *Lissau v. S. Food Serv., Inc*., 159 F.3d 177, 181 (4th Cir. 1998); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). For this reason, the court will dismiss the plaintiff's claims against all the individual defendants, including Jones in his individual capacity.

    II.      Sexual Harassment

Lewis has alleged that Young created a hostile work environment by discriminating

against her based on gender. To prevail on a "hostile work environment" sexual harassment claim under Title VII, an employee must prove that the harassment was: (1) unwelcome, (2) based on sex, (3) sufficiently severe or pervasive to alter the conditions of employment, and (4) imputable to her employer. *See Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). Although the first element is subjective, the other elements are objective, based on a "reasonable person" standard. *Id.* at 565.

Notably, "Title VII does not prohibit all verbal or physical harassment in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). A plaintiff bringing a "hostile environment" sexual harassment claim "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ... because of ... sex.'" *Id.* at 81 (alterations and emphasis in original). An employee is harassed or otherwise discriminated against "because of" her gender if, "but for" the employee's gender, she would not have been the victim of the discrimination. *Pueschel*, 577 F.3d at 565 (citing *Jennings v. Univ. of N.C.*, 482 F.3d 686, 723 (4th Cir.2007)). A plaintiff alleging gender-based harassment "can succeed only by showing that she is the individual target of open hostility because of her sex," not simply alleging that "she was the target of open hostility." *Ziskie v. Mineta*, 547 F.3d 220, 226 (4th Cir. 2008) (internal quotation marks and citations omitted).

Harassment that occurs between two individuals of the same sex may be sexual harassment under Title VII. *Oncale*, 523 U.S. at 82. In *Oncale*, the Court listed three possible evidentiary routes by which plaintiffs alleging same-sex sexual harassment may prove that the harassment occurred because of sex. *Id.* at 80–81. First, a factfinder could infer that the harassment was motivated by sex if the conduct consisted of proposals of sexual activity and

7

"there was credible evidence that the harasser was homosexual." *Id*. at 80. Second, the plaintiff could show that she was "harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser [was] motivated by general hostility to the presence of women in the workplace." *Id.* Third, the plaintiff could "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id*. at 80–81. Additionally, several courts have held that a plaintiff may prove harassment was based on sex by offering evidence that the harasser was sexually interested in the plaintiff. *See e.g.*, *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1265 (10th Cir. 2005) (emphasizing that "*Oncale*'s first evidentiary route turns on whether the harasser acted out of sexual desire," not whether the harasser identifies as homosexual).

   Lewis has not shown that Young targeted her because of her sex. There is no evidence that Young's actions were based on her sexual interest in Lewis. Additionally, the plaintiff presents no evidence that Young was generally hostile towards other women at the school or that she treated women differently from men. Although the plaintiff has alleged facts that Young acted inappropriately by reprimanding her in front of her colleagues and by sending her an anonymous letter claiming to be her husband's mistress and insulting her appearance, Lewis has not shown that Young took those actions because of Lewis's gender. Young's description of the plaintiff's appearance as "a he-man with that big, donkey ass" implies that, in Young's view, Lewis is not sufficiently feminine, but "it is not enough that the challenged conduct be sex-specific." *See Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001) (holding that a male supervisor's remarks to a male employee that he thought the employee was "F-ing the cashiers" and his reference to the "small bag between [the male employee's] legs" were not

based on gender because the plaintiff did not present evidence that those comments "were animated by [the supervisor's] hostility to [the plaintiff] as a man"). Furthermore, the evidence indicates that Young's harassment of Lewis was motivated by her general hostility towards Lewis and dissatisfaction with her job performance, rather than Lewis's sex. *See Davis v. Coastal Inter'l Sec., Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002) (explaining that the plaintiff's "own testimony conclusively shows that [the harassers] were motivated by a workplace grudge, not sexual attraction"). Because there is no evidence that Young targeted Lewis because she is a woman, the court will grant the defendants' motion for summary judgment on Lewis's sex discrimination claim.

### III. Retaliation

Lewis claims her employer retaliated in response to her complaint against Young. To establish a prima facie case of retaliation, a plaintiff must show that she: (1) engaged in a protected activity; (2) the employer acted adversely against her; and (3) the protected activity and the adverse action were causally connected. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). A plaintiff can demonstrate that an employer "acted adversely" by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). Under the *McDonnell Douglas* framework, after a plaintiff establishes a prima facie case of retaliatory discrimination, the burden then shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d

243, 250 (4th Cir. 2015). If the employer makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (internal quotation marks and citations omitted).

In the context of the first element of a retaliation claim, an employee is protected not only when she opposes employment actions that are actually unlawful under Title VII, but also when she opposes employment actions she reasonably believes to be unlawful. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). Assuming without deciding that Lewis reasonably believed that Young sexually harassed her, and therefore Lewis engaged in a protected activity when she filed what she considered a sexual harassment complaint with the Board's EEO Office, her retaliation claim nonetheless fails because she has not established a causal connection between filing a complaint with the Board's EEO Office and being reassigned and receiving a negative evaluation.

Lewis's EEOC charge, in which she claims the Board retaliated against her, generally limits the scope of the court's inquiry into the alleged adverse employment actions. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). In her charge, Lewis says her employer retaliated against her when Young issued her a written warning for attendance and placed her on an improvement plan, the Board demoted her to a teaching position, the Board removed her from the assistant principal position at Coppin Academy, and Conley rated her performance as unsatisfactory in her final evaluation for the 2011-2012 academic year. (Charge of Discrimination.) The Board's removal of Lewis from the assistant principal position and its reassignment of her to a teaching position constitute adverse employment actions. *See Boone v.*

*Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (noting that Title VII liability can arise from "reassignment with significantly different responsibilities"). A negative evaluation, however, "does not in itself constitute an adverse employment action," but becomes relevant evidence "if relied upon for a true adverse employment action." *Jeffers v. Thompson*, 264 F.Supp.2d 314, 330 (D. Md. 2003). Similarly, the issuance of an attendance warning and placement on an improvement plan do not in themselves qualify as adverse employment actions. *See Rock v. McHugh*, 819 F.Supp.2d 456, 470–71 (D. Md. 2011).

      In evaluating causation at the prima facie stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act. *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding that a plaintiff had not established a prima facie case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (determining that a lengthy period of time between the employer becoming aware of the protected activity and the alleged adverse employment action negated any inference that a causal connection existed). The reassignment was issued by Kim Lewis, the human capital officer. The plaintiff has presented no evidence that Kim Lewis knew of her complaint against Young. Additionally, there is no evidence that Conley, at the time of the evaluation, knew that Lewis had engaged in a protected activity. Accordingly, no reasonable finder of fact could conclude that the actors were aware that Lewis had engaged in protected activity at the time of the allegedly retaliatory acts.

In order for temporal proximity alone to satisfy the causation prong of the prima facie case, the temporal proximity must be very close. *See Allen v. Rumsfeld*, 273 F.Supp.2d 695, 707 (D. Md. 2003) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In this case, Lewis filed her complaint against Young in December, and she was reassigned and issued a negative evaluation more than six months later. "A six month lag is sufficient to negate any inference of causation." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001).

However, even if Lewis had established a prima facie case of retaliation, the Board has satisfied its burden of providing a legitimate non-retaliatory reason for its allegedly retaliatory acts. In both of its letters to Lewis informing her of her reassignment, the Board explained that she was being reassigned because of the needs of the school system. Although Lewis was offered the assistant principal position at Coppin Academy, it had not been approved. Additionally, the Board has provided attendance sheets, which document Lewis's regular absences, and Lewis's formal observations, in which whole sections are left blank. Lewis's inconsistent attendance and incomplete formal observations demonstrate that she was not meeting the Board's job performance expectations. Therefore, the Board had cause to issue a negative performance evaluation and reassign Lewis to a teaching position.

Because the Board has proffered legitimate non-retaliatory reasons for its acts, under the *McDonnell Douglas* framework, Lewis has the burden of showing that "retaliation was a but-for cause of a challenged adverse employment action." *Foster*, 787 F.3d at 252. Although Lewis has generally asserted that the Board's actions were retaliatory, she has offered no specific facts to support her assertions. In fact, the evidence demonstrates that in response to Lewis's sexual harassment complaint against Young, the Board took disciplinary action against Young and

demoted her. Additionally, Lewis has not shown that the basis for the negative evaluation was false. Lewis admitted that she submitted incomplete formal observations, (Lewis Dep. 90-100), and in her annual evaluation, Conley cited Lewis's lack of feedback as a primary reason for her unsatisfactory rating. Viewing all of the evidence in the light most favorable to Lewis, she cannot establish that, but for the Board's retaliatory motives, she would not have been issued a negative evaluation and reassigned from an administrative position to a teaching position. Accordingly, the court will grant the Board's motion for summary judgment on the retaliation claim.

IV. ADA

Lewis claims that Young disclosed her confidential medical information in violation of the confidentiality provisions of the ADA when she told Lewis's colleague that Lewis was seeing a psychiatrist, information Young learned from a return to work slip that Lewis's husband faxed her. The ADA makes it illegal for an employer to "discriminate against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Lewis has not established that she has a disability as the ADA defines it. Essentially, Lewis's claim is that Young's actions caused her to suffer from the mental impairment of job-related stress, which limited her in the major life activity of working under 42 U.S.C. § 12102(2)(A). A temporary impairment generally does not qualify as a disability under the ADA because a condition that will improve in a relatively short period of time does not meet the

ADA's "substantially limits" requirement. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 468 (4th Cir. 2002). To be substantially limited in the major life activity of working, so as to be disabled under the ADA, "[a]n individual must demonstrate that she is unable to work in a broad range of jobs." *Id.* at 471. Additionally, "obtaining a new job is evidence that an impairment is not substantially limiting." *Id*.

Lewis presents no evidence that her impairment was more than temporary. She was granted FMLA leave beginning on January 25, 2012, and she notified the Board she was able to return to work as an assistant principal at Coppin Academy on June 12, 2012. During the 2012-2013 academic year, she worked for Edison Learning, Inc. at Montebello Elementary Junior Academy as an academy director, which she says is the equivalent to an assistant principal, and she is currently employed as a lecturer and coordinator of Professional Development Schools at the University of Maryland Eastern Shore. (Lewis Curriculum Vitae, Pl.'s Opp'n Ex. 41, ECF No. 24.) Her reemployment demonstrates that she is not "disabled," as defined in the ADA, and that her impairment was only temporary. At most, Lewis has shown an inability to work under Young, but not being able to work with a particular supervisor does not qualify as a disability under the ADA. *See*, *e.g.*, *Weiler v. Household Finance Corp.,* 101 F.3d 519, 524 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress . . . .").

Even if Lewis's job-related stress were a disability under the ADA, it is not clear that Lewis's return to work slip is protected by the confidentiality provisions of the ADA. The ADA limits the scope of information that employers may seek and disclose about their employees' medical conditions. *See* 42 U.S.C. § 12112(d). "[A]n employer is prohibited from requiring a

medical examination or making inquiries of an employee as to whether he is an 'individual with a disability or as to the nature or severity of the disability unless such examination or inquiry is shown to be job-related and consistent with business necessity.'" *Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 246 (4th Cir. 1997) (quoting 42 U.S.C. § 12112(d)(4)). Employers are permitted to gather disability information from current employees in two ways. First, they may "conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program . . . ." 42 U.S.C. § 12112(d)(4)(B). Second, employers "may make inquiries into the ability of an employee to perform job-related functions." *Id*. The ADA requires that all information received by employers from these two channels be kept confidential. 42 U.S.C. § 12112(d)(4)(C). Lewis claims that her husband sent the return to work slip in response to an employer inquiry because her employer required medical documentation to justify use of sick time for absences. However, only "inquiries into the ability of an employee to perform job-related functions" are covered under the ADA, and Lewis admits that her employer never made inquiries into her ability to perform her job. (Lewis Dep. 145.) Although Young's disclosure of the contents of Lewis's doctor's note was inappropriate, it did not amount to a violation of the ADA. Therefore, the court will grant the defendants' motion for summary judgment on this claim.

## CONCLUSION

For the reasons stated above, the court will grant the defendants' motion for summary judgment.

A separate order follows.

May 20, 2016                                                                /S/
Date                                                                     Catherine C. Blake
                                                                         United States District Judge